UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                                                  Crim. No. 5:14-cr-45

Devin Richardson

## **REPORT AND RECOMMENDATION**
(Doc. 72)

Devin Richardson, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate his conviction and the sentence imposed upon him following his plea of guilty to one count of engaging in a conspiracy to distribute oxycodone and heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). (Doc. 72 at 1; Doc. 71 at 1.) On August 25, 2015, Richardson was sentenced to a 48-month term of imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay a mandatory $100 special assessment by Chief United States District Judge Christina Reiss. (Doc. 71 at 2–5.) No direct appeal was pursued.

In his § 2255 Motion, Richardson now asserts that the government's failure to produce "grand jury minutes" for his personal inspection, pursuant to a perceived court order, "caused an unnecessary delay in the defendant[']s ability to defend against count one of the superseding indictment, in violation of the Due Process Clause of the 5th Amendment to the U.S. Constitution." (Doc. 72 at 1.) The government opposes Richardson's Motion. (Doc. 84.) I recommend that Richardson's Motion be DENIED for the reasons set forth below.

## Background

I.   **The Superseding Indictment**

Richardson was initially charged in a one-count Indictment, which accused him of possessing with the intent to distribute oxycodone, a controlled substance, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C).  (Doc. 1.)  Prior to his arraignment, Attorney Michael Shklar was appointed to represent Richardson.  (*See* 04/28/2014 Docket Entry, CJA 20: Appointment of Attorney Michael C. Shklar for Devin Richardson.)  Then, on June 6, 2014, Richardson was arraigned on the initial Indictment and ordered detained pending trial.  (Doc. 14.)

On July 15, 2014, a Superseding Indictment was filed in which Richardson was accused of committing two violations of the Controlled Substances Act.  (Doc. 16.)  More precisely, Count I accused Richardson of engaging in a conspiracy to distribute oxycodone and heroin "[f]rom about the summer of 2012 through April 11 and 12, 2013," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, and Count II accused him of possessing with the intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  A Notice of Forfeiture alleged that as a consequence of the commission of Count I, Richardson's interest in an amount of United States currency was forfeitable to the United States.  (*Id.* at 1–3.)

II.   **Attorney Shklar's Motion to Withdraw as Counsel**

On October 24, 2014, Attorney Shklar filed a motion seeking leave to withdraw from the case.  (Doc. 22.)  In his motion, Shklar asserted that communications in the attorney-client relationship had "broken down irremediably." (*Id.* at 1.)  Shklar explained

that damaging evidence against Richardson came in the form of grand jury testimony. (*Id.* at 1.) According to Shklar, Richardson did not have direct access to the grand jury testimony and had to rely on counsel's summaries. (*Id.*) This process had led to "frustration" on the part of Richardson and a breakdown in the attorney-client relationship. (*Id.*) Shklar also reported that Richardson wished to represent himself. (*Id.*)

On November 21, 2014, a hearing was held on the motion to withdraw. (Docs. 24, 79.) Chief Judge Reiss invited the Assistant United States Attorney (AUSA) to temporarily excuse herself from the proceeding. (Doc. 79 at 2.) After the AUSA left the courtroom, Attorney Shklar elaborated on the concerns presented in his written motion. He explained to the court that the attorney-client relationship had broken down between Shklar and Richardson, primarily because of Richardson's inability to gain direct access to grand jury testimony. (*Id.* at 4–6.) Attorney Shklar stated that although the government had permitted Shklar to review the grand jury testimony, Shklar was not allowed to take actual possession of the transcripts to review them with his client. (*Id.* at 5–6.) Rather, Shklar was left to summarize his review of the testimony with his incarcerated client. (*Id.*) Noting that the government had extended a plea offer to Richardson, Shklar suggested that the breakdown in communications and trust between attorney and client had hampered an effective review of the plea offer. (*Id.* at 6.) After making inquiry of Richardson, the district court granted Shklar's motion to withdraw. (*Id.* at 8.) The court thereupon ascertained from Richardson that he did not wish to

represent himself. (*Id*. at 9.) The court then informed Richardson that new counsel would be appointed to represent him. (*Id.*)

With regard to the frustration Richardson had experienced with the grand jury testimony disclosure process, the court stated:

> Okay. I will appoint you new counsel, and you are going to have to work with that person. And one of the things that can happen in terms of discovery, which you can work out with your new counsel -- and I will mention to [the AUSA] -- is it would not be the first time I have had somebody say, " I want to see the grand jury testimony myself. I want to see it myself. I'm the client, and I have the right to do it," and I have arranged for that to happen.

(*Id.* at 9–10.)

The court continued by describing to Richardson the general reason why the government does not make available actual copies of grand jury testimony to incarcerated defendants: The testimony can "implicate other people's safety." (*Id.* at 10.) As part of the discussion, the court observed that in the past, procedures had been implemented to permit an incarcerated defendant an opportunity to physically inspect and read the testimony. (*Id*. at 10.) The court suggested that those procedures might be implemented in this case:

> [THE COURT:] When I have done it in the past, I have had the correctional facility bring it to you, give you a certain amount of time to review it. All the pages are numbered. You don't have a photocopier. They take it back and they give it back.
> So we can -- we can work with that, and you can see for yourself. Would that be something that would be of value to you?
>
> THE DEFENDANT: Yes, ma'am.

(*Id.*)

4

The AUSA rejoined the proceeding and the court thereupon raised with her the possibility of disclosing the grand jury testimony to the defendant. (*Id.* at 11.) The court described the procedures utilized in a prior case and suggested to the prosecutor that the procedures used in that case could be implemented in the instant case:

> You wouldn't have any obligation to disclose things early, but sometimes -- his case actually went to trial. He wanted to see those materials, and I found that he had a right to do so under controlled circumstances.
> So we may get to that and we may not get to that, but I wanted to let you know that's not unprecedented, and I am confident -- I did some research before I allowed that to happen. Okay?

(*Id.*)

The court concluded its remarks by informing Richardson as follows: "If it turns out that you need to see something in order to make your decisions, the attorneys know to come to me and tell me that they need an order from the Court, and we will go from there." (*Id.* at 12.)

### III. Plea of Guilty and Sentencing

Attorney Maryanne Kampmann was subsequently appointed to represent Richardson. (*See* 11/25/2014 Docket Entry, CJA 20: Appointment of Attorney Maryanne E. Kampmann) Attorney Kampmann filed several motions to suppress evidence on Richardson's behalf. (Docs. 36–39.) On April 13, 2015, while those motions were pending, a Plea Agreement was filed in which Richardson agreed to plead guilty to Count I of the Superseding Indictment, which charged him "with conspiring to distribute oxycodone and heroin in Vermont and elsewhere from about the summer of 2012 through April 11 and 12, 2013, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846."

5

(Doc. 46 at 1). As part of that agreement Richardson and the United States agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the appropriate term of imprisonment was 48 months. (*Id.* at 5.)

On May 6, 2015, Richardson appeared in the district court to enter his plea. (Docs. 47, 77.) The transcript of that proceeding reveals that the district judge engaged in the complete colloquy required by Rule 11 of the Federal Rules of Criminal Procedure. (Doc. 77 at 7–23.) The court ascertained that no promises, other than those set forth in the agreement, and no threats had been made to induce Richardson to plead guilty. (*Id.* at 11.) Upon completing the colloquy, the court accepted Richardson's plea of guilty, concluding that Richardson was "fully competent and capable of entering an informed plea," that he was "aware of the nature of the charges and consequences of [his] plea," and that the plea of guilty was "a knowing and voluntary plea supported by an independent basis in fact." (*Id.* at 22–23.) The court then ordered the preparation of a presentence report in anticipation of sentencing. (*Id.* at 23.)

The United States Probation Office prepared a presentence investigation report (PSR) and submitted it to the court before sentencing. The Offense Conduct section of the PSR described an extensive investigation into the activities of the defendant and coconspirators. (PSR at 4–8, ¶¶ 9–33.) The report detailed the seizure of controlled substances, currency, scales, and the identification of another person from an apartment occupied by Richardson. (*Id.* at 4, ¶¶ 12–13.) It also described a post-arrest statement made by Richardson wherein he admitted to traveling from New York to Vermont to distribute controlled substances. (*Id.* at 4–5, ¶¶ 14–15.) In addition, the PSR detailed the

grand jury testimony of three witnesses. (*Id.* at 6–9, ¶¶ 18–33.) The testimony of each implicated Richardson in the extensive drug distribution activities of the conspirators. (*Id.*)

With respect to the advisory Sentencing Guidelines, the PSR concluded that Richardson faced a range of imprisonment of 84–105 months. (*Id.* at 18, ¶ 94.) The PSR also took notice of the Plea Agreement, in which the parties had agreed to the imposition of a 48-month sentence in the event the Agreement was accepted by the court. (*Id.* at 18, ¶ 95.)

Richardson appeared for sentencing on August 25, 2015. (Docs. 70, 78.) The court ascertained from Richardson that he had read and reviewed the PSR and that the document contained no factual errors. (Doc. 78 at 2.) Attorney Kampmann confirmed that the PSR contained no factual errors. (*Id.*) The court announced its acceptance of the binding plea agreement, noting that the agreed-upon 48-month sentence was "quite favorable" to Richardson in light of his prior criminal history and the quantity of drugs involved in the conspiracy. (*Id.* at 3.) After hearing from counsel and the defendant, the court engaged in the analysis and calculations required by the advisory Sentencing Guidelines. (*Id.* at 30–32.) Consistent with the PSR, the court concluded that Richardson faced an advisory sentencing guideline range of 84–105 months. (*Id.* at 31.) However, having indicated its acceptance of the Plea Agreement, the court imposed the 48-month sentence. (*Id.* at 38.) Richardson was advised of his right of direct appeal. (*Id.* at 40.) No direct appeal was taken.

**IV.     The § 2255 Motion**

Richardson claims in his Motion that the government improperly denied him access to "grand jury minutes"[1] despite having been ordered by the court to make the transcripts available to him.  (Doc. 72 at 1.)  Richardson asserts that he was unable to "defend against the conspiracy count" because of this denial of access.  (*Id.* at 1–2.)  For relief, Richardson asks that the court vacate his sentence and dismiss count one of the Superseding Indictment.  (*Id.* at 5.)

**Analysis**

**I.     Standards Governing § 2255 Motions**

A prisoner in federal custody may file a motion under 28 U.S.C. § 2255 on the grounds that his sentence was imposed in violation of the Constitution or federal laws, was issued by a court that did not have jurisdiction, was in excess of the lawful maximum, "or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is therefore generally available "'only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a "fundamental defect which inherently results in a complete miscarriage of justice."'"  *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).  Richardson bears the burden of establishing by a preponderance of the evidence any claim advanced in his § 2255 Motion.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (stating "burden of proof" fell on claimant

---

[1] Richardson's references to the "grand jury minutes" are construed as references to transcripts of witness testimony during the grand jury proceedings.

by a "preponderance of the evidence"); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995) (noting "usual burden" on petitioners).

Two related hurdles may bar a prisoner's § 2255 motion. First, a defendant's guilty plea waives any non-jurisdictional claims. *United States v. Hsu*, 669 F. 3d 112, 117–18 (2d Cir. 2012) ("[I]t is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." (quoting *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987))). Second, "[a] § 2255 petition may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). Accordingly, where a federal prisoner attempts to use a § 2255 motion to assert a claim that could have been raised on direct appeal but was not so raised, the claim will be procedurally barred unless the prisoner shows (1) cause for failing to raise the claim on direct appeal and prejudice therefrom, or (2) actual innocence. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) ("[T]he procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998))).

### A.   Waiver

Here, Richardson has waived his substantive challenges to the Superseding Indictment by his plea of guilty. As noted above, "[i]t is well settled that a defendant's

9

plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle*, 815 F. 2d at 881. Richardson does not challenge the jurisdiction of the court but claims that the government failed to provide grand jury transcripts to him as ordered by the court prior to his decision to plead guilty. Because Richardson has pled guilty to the offense, his claim has been waived.

### B. Default

Similarly, Richardson's claim is barred because he failed to pursue the claim on direct appeal. *DeJesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) ("[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted."). Richardson makes no attempt to show cause— defined as "something external to the petitioner" that "cannot fairly be attributed to him"—for his failure to raise his arguments on direct appeal. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis omitted). Nor does Richardson satisfy his burden to show any resulting prejudice. The grand jury testimony at issue was described in detail in the PSR. It is compelling evidence of Richardson's participation in the conspiracy to which he pleaded guilty, particularly when combined with the following: tangible evidence of drug trafficking seized in the investigation, and Richardson's post-arrest

admissions. (*See* PSR at 4–5, ¶¶ 12–15.) Moreover, Richardson makes no showing of actual innocence. Accordingly, his claim is barred by his procedural default.

## II.   Merits of Richardson's Claim

Assuming *arguendo* that Richardson could overcome the foregoing procedural hurdles, his claim is substantively without merit. Richardson asserts that the district court ordered the government to make personally available to him the grand jury transcripts and that the government failed to abide by the disclosure order. But in fact, the court did not order the government to do so. The transcript of the hearing on the motion to withdraw reveals that the court did discuss procedures had been implemented in a prior case to facilitate that defendant's inspection of grand jury transcripts. However, the court observed that "we may get to that and we may not get to that." (Doc. 79 at 11.) At the hearing, Richardson was informed that if a disclosure order was needed, the attorneys could return to court and they would "go from there." (*Id.* at 12.) Ultimately, because Richardson elected to plead guilty, no such grand jury disclosure order was sought or entered. Richardson's claim is based on an inaccurate reading of the record.

To the extent that Richardson's claim can be construed as a challenge to the voluntariness of his plea, this argument also is without merit. It is noted that when asked by Judge Reiss if "anyone pressured you, threatened you or coerced you in any manner into entering into the plea agreement or entering a guilty plea," Richardson, under oath, responded, "No." (Doc. 77 at 11.) Richardson also indicated that he had had a full opportunity to review the plea agreement with counsel and that he fully understood its terms and conditions. (*Id*. at 10–11.) Judge Reiss reviewed the binding nature of the

agreed-upon sentence with Richardson, and he acknowledged an understanding of the agreement.  (*Id.* at 12.)  Richardson also acknowledged the accuracy of the government's factual statement supporting the charge.  (*Id.* at 22.)

Statements such as these at a plea allocation "carry a strong presumption of veracity."  *United States v. Doe*, 537 F. 3d 204, 213 (2d Cir. 2008); *see also Adames v. United States*, 171 F. 3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them.").  Furthermore, "[a] plea is made knowingly 'if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way.'"  *Cekaj v. United States*, 14–cv–03004 (GBD), 12–cr–00600 (GBD), 2016 WL 354195, at *3 (S.D.N.Y. Jan 25, 2016) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)).  A plea is considered voluntary "if the defendant is 'fully aware of the [plea's] direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . unless induced by threats . . . misrepresentation . . . [ ] or by promises that are by their nature improper.'"  *Id.* (alterations in original) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).  Where, as here, "'a defendant obtains a meaningful strategic benefit by pleading guilty, most courts consider it unlikely that an involuntary or ill-advised plea ensued.'"  *Cusano v. United States*, No. 05 Civ. 7177(WHP), 2007 WL 4142771, at *3 (S.D.N.Y. Nov. 16, 2007) (quoting *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004)).  And where, as here, there is "extensive evidence of his guilt," the petitioner must articulate a convincing basis on which he would have foregone

"the substantial benefit resulting from his plea" and risked a harsher sentence at trial. *See Boakye v. United States*, No. 09 Civ. 8217, 2010 WL 1645055, at *5–6 (S.D.N.Y. Apr. 22, 2010).

In the face of overwhelming evidence of his guilt, Richardson obtained a significant strategic benefit by pleading guilty. Despite facing a Sentencing Guideline range of 84–105 months in prison, Richardson achieved a binding sentence of 48 months by his plea of guilty. The record also demonstrates that he entered his guilty plea knowingly and voluntarily; he understood the consequences of entering the plea, and he stated under oath that no threats or misrepresentations had induced him to plead guilty. In light of all this, any suggestion that his guilty plea was an involuntary one rings hollow.

## III.     No Evidentiary Hearing is Required

When ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (stating § 2255 does not permit summary dismissals of motions that present "facially valid claims"). However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.

13

*See Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).

Here the existing record is sufficient to rule on Richardson's Motion. Quite simply, Richardson has failed to show specific facts that, if proved at a hearing, would warrant the granting of his § 2255 Motion. Accordingly, no hearing is required.

## Conclusion

Based on the foregoing, I recommend that the Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 72) be DENIED.

Dated at Burlington, in the District of Vermont, this 28th day of March, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).